## IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**AMY C. HOLMAN,**
**Claimant Below, Petitioner**

**FILED**
**January 10, 2023**

EDYTHE NASH GAISER, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**vs.) No. 22-ICA-107** (BOR Appeal No.: 2058160)
(JCN: 2021015502)

**WEST VIRGINIA UNITED HEALTH SYSTEMS, INC.,**
**Employer Below, Respondent**

### MEMORANDUM DECISION

Petitioner Amy C. Holman appeals the August 19, 2022, order of the Workers' Compensation Board of Review ("Board"). Respondent West Virginia United Health Systems, Inc., filed a timely response.[1] Petitioner did not file a reply brief. The issue on appeal is whether the Board erred in affirming the Office of Judges' decision finding the claim non-compensable.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 5111-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On January 19, 2021, Ms. Holman presented to Garth B. Wright, M.D., an orthopedic surgeon, with complaints of medial and posterior left knee pain. Dr. Wright's clinical notes indicated that Ms. Holman had a history of a right knee arthroscopy and partial medial meniscectomy performed in 2020 and a left knee surgery performed at the age of twelve due to a congenital problem with the patella. Dr. Wright assessed medial meniscus tear and scheduled an MRI of the left knee on January 21, 2021, for verification.

Subsequently, on the morning of January 21, 2021, Ms. Holman, a radiology technologist, was at work and attempting to move a patient from a CT scan table to a stretcher when she felt a popping sensation in her left knee accompanied by immediate pain. Ms. Holman proceeded to the emergency department, and an x-ray performed of the left knee was normal. The clinical impression was left knee strain. Later that same day, Ms. Holman attended her previously scheduled MRI appointment. The MRI of the left knee

---

[1] Petitioner is represented by J. Thomas Greene, Jr., Esq., and T. Colin Greene, Esq. Respondent is represented by Jillian L. Moore, Esq., and Steven K. Wellman, Esq.

revealed mild chondromalacia of the medial and lateral femoral condyles, mild to moderate chondromalacia of the patella, mild arthritic degenerative changes, and a suspected medial meniscus tear.

At some point, an initial report of injury was completed by the employer. The report of injury noted that a coworker heard Ms. Holman's knee pop during the patient transfer but stated that Ms. Holman had been complaining of knee pain for several weeks. By order dated February 15, 2021, the claim administrator rejected the claim, finding that Ms. Holman

> did not suffer a discrete new injury resulting from the alleged incident at work. [Ms. Holman's] knee issue preexisted the alleged injury, as evidenced by Dr. Wright's medical records, and the condition continued following the alleged injury. There was no change in [Ms. Holman's] condition or treatment plan to constitute a discrete new injury.

Ms. Holman protested the order.

On February 17, 2021, Dr. Wright performed a diagnostic arthroscopy of the left knee and chondroplasty of the trochlea and patella of the left knee. The preoperative diagnosis was degenerative meniscal tear of the left knee. However, upon performing the procedure, Dr. Wright determined that the meniscus was intact and had no tears. Post-operatively, Dr. Wright diagnosed "internal derangement of the left knee with lateral patellar maltracking and grade 3-4 chondromalacia of the left knee and patellofemoral joint." Regarding maltracking, Dr. Wright reported that there was a groove in the lateral facet of the patella.

On April 30, 2021, Ameet Parikh, D.O., assisted Ms. Holman in completing an Employees' and Physicians' Report of Occupational Injury and Disease, stating that she had sustained a ligamentous tear of her left knee and opining that her injury was the direct result of an occupational injury.[2]

Ms. Holman testified via deposition on May 6, 2021. According to Ms. Holman, her knee popped out of place while she was moving a patient from a scan table to a stretcher and that she felt immediate pain. Ms. Holman claimed that Dr. Wright informed her that her kneecap was displaced and that she may have a torn ligament, requiring a "Fulkerson surgery" that was scheduled for July of 2021. Ms. Holman admitted that she saw Dr. Wright two days prior to her alleged injury due to left knee pain that had presented a few days to a week prior and that, at the time, she believed she might have had a torn meniscus.

---

[2] It is unknown why Dr. Parikh filled out this form after the claim had already been denied or why he listed a ligamentous tear as the injury when the February 17, 2021, arthroscopy performed by Dr. Wright showed no evidence of tears.

However, Ms. Holman testified that her knee pain was worse after the alleged injury and that she could not walk for a few days.

On May 18, 2021, Ms. Holman was examined by E. McDonough, M.D. Dr. McDonough advised Ms. Holman that she did not need a Fulkerson surgery and could return to work immediately. Dr. McDonough assessed chondromalacia of the patella with left knee pain and prescribed a lateral buttress brace. Ms. Holman attended a follow-up visit with Dr. McDonough in July of 2021 and reported that she had no pain. As such, Dr. McDonough discharged her from his care.

In September of 2021, Ms. Holman was examined by Jennifer L. Lultschik, M.D. According to Dr. Lultschik's notes, Ms. Holman reported her current symptoms as an occasional locking sensation in her left knee or pain while walking downstairs or downhill. Ms. Holman also reported that she returned to work after seeing Dr. McDonough and that she had no difficulty performing all tasks at her job. Dr. Lultschik diagnosed Ms. Holman with osteoarthritis, patellar maltracking, chondromalacia of the patella, and patellar instability. Dr. Lultschik opined, given the fact that Ms. Holman's osteoarthritis was a grade 3-4 in severity, it preexisted the alleged injury of January 21, 2021. Dr. Lultschik also found that the chondromalacia of the patella was present prior to the alleged injury, likely for decades based upon Ms. Holman's congenital problem with her patella. According to Dr. Lultschik, neither the radiologist nor the two treating surgeons noted any evidence of an acute injury from either the imaging or the arthroscopy. As such, in Dr. Lultischik's opinion, Ms. Holman had sustained no discrete new injury to her knee.

By order dated March 11, 2022, the Office of Judges ("OOJ") affirmed the claim administrator's order rejecting the claim. The OOJ found that Ms. Holman presented with left knee pain two days prior to the alleged injury and that an MRI was recommended at that time—not after the injury. The OOJ found that the evidence failed to establish that Ms. Holman sustained a compensable injury from the incident. While a meniscus tear was initially suspected, an arthroscopy of the knee revealed no tears. Rather, Ms. Holman was diagnosed with osteoarthritic degenerative changes, mild patellar retinaculum sprain of uncertain chronicity, chondromalacia, and internal derangement of the knee with lateral patellar maltracking which had created a groove. The OOJ noted that Dr. Lultschik opined that the maltracking and chondromalacia predated the alleged injury and that there was no evidence they were causally related to the incident. Lastly, the OOJ noted that while the impression from Ms. Holman's emergency room visit was a left knee strain, the records did not provide a mechanism of injury, and the MRI performed later that day revealed that the sprain was of uncertain chronicity. In sum, no physician of record reported that Ms. Holman sustained a left knee sprain as a result of her reported mechanism of injury. Accordingly, the OOJ found that there was insufficient evidence to find the claim compensable and affirmed the claim administrator's order. On August 19, 2022, the Board adopted the findings of fact and conclusions of law of the OOJ and affirmed its March 11, 2022, order. Ms. Holman now appeals.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

On appeal, Ms. Holman argues that the lower tribunals wrongly held that she did not sustain an injury in the course of and as a result of her employment when the evidence below establishes that she was moving a patient and felt a pop, followed by immediate pain, in her left knee. Ms. Holman contends that prior to the injury, she had no restrictions or limitations at work. While Ms. Holman admits she may have had preexisting conditions, she states that she had not had treatment for her congenital condition of the left knee since she was twelve years old and was asymptomatic leading up to the injury. Further, Ms. Holman notes that her treatment with Dr. Wright two days prior to the injury included different parts of her knee than where the injury occurred. Following the injury, Ms. Holman claims she experienced severe pain, was assessed with a knee sprain, underwent an arthroscopy of the left knee, and needed physical therapy in order to return to work. Ms. Holman argues that she demonstrated new symptoms, such as locking of her knee, crepitus, limited range of motion, and atrophy, all of which demonstrated an injury. However, the treating physicians wrongly attributed these new symptoms to preexisting conditions. According to Ms. Holman, Dr. Parikh completed the physician's section of her workers compensation claim form and diagnosed her with a ligamentous tear and attributed it to her occupational injury. While the diagnosis was incorrect, Ms. Holman contends that Dr. Parikh's opinion is still evidence of an occupational injury. Accordingly, she argues that the OOJ as affirmed by the Board clearly erred in rejecting the claim.

After review, we find no error in the OOJ's order as affirmed by the Board. At the outset we note that Ms. Holman fails to include a distinct assignment of error in her brief on appeal in violation of Rule 10 of the West Virginia Rules of Appellate Procedure. Additionally, Ms. Holman fails to identify what diagnosis she is asking this Court to hold

4

as compensable. Ms. Holman generally refers to a knee injury but does not state specifically what diagnosis should have been compensable. Importantly, the Employee's and Physician's Report submitted by Ms. Holman lists only a ligamentous tear as being an occupational injury. However, Dr. Wright's post-operative notes demonstrate that Ms. Holman sustained no tear to her meniscus. In reviewing the record, no other injuries were attributed to Ms. Holman's occupation. Rather, the only other diagnoses given to Ms. Holman during the proceedings below were preexisting conditions. Specifically, Ms. Holman was diagnosed with osteoarthritis, patellar maltracking, chondromalacia of the patella, and patellar instability. Dr. Lultschik opined that the severity of Ms. Holman's osteoarthritis indicated that it significantly predated the alleged injury. Likewise, Ms. Holman's issues with the patella were present prior to the alleged injury and were likely due to her congenital issues. Further, the presence of a groove with the patellar maltracking suggested that the issues had been ongoing for some time. Dr. Lultschik further explained that no physician of record had found any evidence of acute injury. Finally, the last diagnosis received by Ms. Holman during the proceedings below was left knee strain by the attending physician at the emergency room. However, as noted by the OOJ, the clinical notes from that visit do not describe the mechanism of injury and do not attribute the injury to Ms. Holman's occupation, simply noting that she was at work when she felt sudden onset knee pain.

To the extent that Ms. Holman argues that her preexisting knee condition was aggravated by a work-related injury, we find that she is entitled to no relief. The Supreme Court of Appeals of West Virginia has previously held that

> [a] noncompensable preexisting injury may not be added as a compensable component of a claim for workers' compensation medical benefits merely because it may have been aggravated by a compensable injury. To the extent that the aggravation of a noncompensable preexisting injury results in a [discrete] new injury, that new injury may be found compensable.

Syl. Pt. 3, *Gill v. City of Charleston*, 236 W. Va. 737, 783 S.E.2d 857 (2016). However,

> [a] claimant's disability will be presumed to have resulted from the compensable injury if: (1) before the injury, the claimant's preexisting disease or condition was asymptomatic, and (2) following the injury, the symptoms of the disabling disease or condition appeared and continuously manifested themselves afterwards. There still must be sufficient medical evidence to show a causal relationship between the compensable injury and the disability, or the nature of the accident, combined with the other facts of the case, raises a natural inference of causation. This presumption is not conclusive; it may be rebutted by the employer.

5

Syl. Pt. 5, *Moore v. ICG Tygart Valley*, LLC, No. 20-0028, -- W. Va. --, 879 S.E.2d 779, 2022 WL 1262269 (W. Va. Apr. 28, 2022).

Here, Ms. Holman fails to demonstrate that any preexisting conditions are compensable under *Gill* or *Moore*. Per *Gill*, Ms. Holman must demonstrate a discrete new injury which, as noted by Dr. Lultschik, is not established by the medical evidence of record. Likewise, per *Moore*, Ms. Holman must demonstrate that her preexisting condition was asymptomatic. However, the record demonstrates that Ms. Holman's knee conditions were symptomatic prior to the alleged injury. The first report of injury filed by the employer shows that Ms. Holman's coworker reported that Ms. Holman had been complaining of knee pain for weeks prior to the incident, and Ms. Holman sought treatment from Dr. Wright for knee pain two days prior to the alleged injury.

In sum, the only diagnosis attributed to Ms. Holman's occupation was a ligamentous tear, which was determined to be an inaccurate diagnosis. Accordingly, when viewing the evidence before us, we are unable to find that the OOJ as affirmed by the Board was clearly wrong in finding that Ms. Holman failed to demonstrate a compensable injury occurred below.

Accordingly, we affirm.

Affirmed.

**ISSUED:** January 10, 2023

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Charles O. Lorensen

Judge Thomas E. Scarr, not participating.

6